# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FELIX RUHUMURIZA, *et al.*,

      *Plaintiffs*,

    v.

JENNIFER B. HIGGINS, Acting Director
of U.S. Citizenship and Immigration
Services,[1] *et al.*,

      *Defendants*.

Civil Action No. 25-109 (SLS)

Judge Sparkle L. Sooknanan

## <u>MEMORANDUM OPINION</u>

The Plaintiffs in this case are eleven Congolese nationals who fled to Kenya in the mid-2010s after experiencing war, terrorist attacks, and discrimination in their home country. Once in Kenya, they applied to settle as refugees in the United States. But the U.S. Citizenship and Immigration Services (USCIS) denied their refugee applications. The Plaintiffs requested reconsideration of those denials and have been waiting many years for an answer. They brought this lawsuit against the Acting Director of USCIS, the Secretary of State, and the Secretary of Homeland Security, alleging that the Defendants have unreasonably delayed adjudicating their requests for reconsideration. They further allege that the Defendants have unlawfully suspended processing of those requests pursuant to Executive Order 14163, which makes certain changes to the refugee admission program. The Defendants now move to dismiss this lawsuit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court grants that motion in all but one respect. The Plaintiffs' arbitrary-and-capricious challenge under the Administrative Procedure Act to the

---

[1] Ms. Higgins is substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

alleged suspension of refugee-application processing survives dismissal at this early stage in the absence of an administrative record.

## BACKGROUND

### A.    Statutory & Regulatory Background

In 1980, Congress amended the Immigration and Nationality Act (INA) to require a "permanent and systematic procedure" governing refugee admissions. Refugee Act of 1980, Pub. L. No. 96–212, § 101(b), 94 Stat. 102 (1980). Through the Refugee Act, the INA provides for the admission and resettlement of refugees in the United States. *See* 8 U.S.C. §§ 1157, 1521–24. It entrusts the President—in consultation with Congress—with setting the annual ceilings on the number of refugees who can be admitted. *Id.* § 1157(a)–(b), (d)–(e). And it tasks the Attorney General with determining, within those "numerical limitations," which refugees should be admitted. *Id.* § 1157(c). Specifically, the statute provides that "the Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible." *Id.* § 1157(c)(1). In 2002, the Homeland Security Act, Pub. L. No. 96–212, 116 Stat. 2135 (2002), transferred authority over refugee admissions from the Department of Justice to U.S. Citizenship and Immigration Services (USCIS), a new agency within DHS, 6 U.S.C. § 271.[2]

Individuals seeking refugee status must comply with a carefully crafted regulatory scheme. Applicants must provide biometric information, participate in an interview with an immigration

---

[2] Until 2002, the Department of Justice carried out its refugee-related responsibilities through the U.S. Immigration and Naturalization Service (INS). The Homeland Security Act of 2002 split the work of INS across three organizations within the newly created Department of Homeland Security (DHS): U.S. Citizenship and Immigration Services (USCIS), U.S. Immigrations and Customs Enforcement, and U.S. Customs and Border Protection. 6 U.S.C. §§ 211, 251, 252, 271.

officer, submit to a medical examination, and find a "responsible person or organization" to serve as a sponsor. 8 C.F.R. §§ 207.1–.2. USCIS is responsible for reviewing and adjudicating each application. 6 U.S.C. § 271. "Approval of a refugee application by USCIS outside the United States authorizes [Customs and Border Patrol] to admit the applicant conditionally as a refugee upon arrival at [a port of entry] within four months of the date the refugee application was approved." 8 C.F.R. § 207.4.

By regulation, "[t]here is no appeal from a denial of refugee status." *Id.* While the USCIS website confirms this lack of appeal for denied applications, it also invites applicants to submit a "timely Request for Review (RFR)" and advises applicants that "USCIS may exercise [its] discretion to review a [denied] case." *Request for Review Tip Sheet*, U.S. Customs & Immig. Serv. (Oct. 9, 2025), https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees/request-for-review-tip-sheet [https://perma.cc/9PAY-KQB3].[3] The website further advises that each applicant "will receive a written decision from USCIS regarding [their] RFR" but that "review processing time may vary based on location." *Id.*

In January 2025, President Donald J. Trump signed Executive Order 14163, "Realigning the United States Refugee Admissions Program." Exec. Order No. 14163, 90 Fed. Reg. 8459 (Jan. 20, 2025). The Executive Order has two provisions relevant to this case. First, it directs "that entry into the United States of refugees under the [U.S. Refugee Admissions Program] be suspended." *Id.* at 8459. Second, the Executive Order provides that "[t]he Secretary of Homeland Security shall suspend decisions on applications for refugee status." *Id.* "Notwithstanding the suspension," the

---

[3] The Court takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)). The USCIS website referenced here is cited in the Plaintiffs' Complaint, FAC ¶ 46 n.8, and the Defendants' briefing, Mot. Dismiss 2.

Executive Order permits "the Secretary of State and the Secretary of Homeland Security [to] jointly determine to admit aliens to the United States as refugees on a case-by-case basis, in their discretion," so long as doing so does not pose a security threat or otherwise conflict with the national interest. *Id.*

### B.    Factual Background

The Court draws the facts, accepted as true, from the Plaintiffs' Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

The Plaintiffs—Felix Ruhumuriza, Aimable Ngirimana, Thomas Sankara, Jolie Nyampundu, Naomi Mbabazi, Lawrence Muzima, Nyadete Nyamahirwe, Aimable Musore, Joshua Musore, Felix Mahirwe, and Eric Ndahiriwe—are eleven Congolese nationals who fled to Kenya in the mid-2010s "out of fear for their safety" after experiencing "war, terrorist attacks, and discrimination in their home country." *See* First Am. Compl. (FAC) ¶¶ 1–2. 51, 61, 70, 79, 88, 95, 103, 113, 124, 137, 149, ECF No. 5.

Once in Kenya, the Plaintiffs applied for refugee status in the United States. FAC ¶¶ 51–159. While some initially received "conditional approval," eventually they all were sent "Notices of Ineligibility," denying their refugee applications. FAC ¶¶ 2–3, 39, 51–159. Each of the Plaintiffs "timely submitted a Request for Review" (RFR) asking USCIS to reconsider its decision. FAC ¶¶ 3, 51–159. The Plaintiffs submitted their RFRs between December 2016 and March 2019. FAC ¶ 18. None of them have yet received a final decision on whether their RFR has been or will be granted. FAC ¶¶ 4, 6, 9–11. As a result, all the Plaintiffs have been waiting for more than six years for a decision and three have been waiting for nine years. FAC ¶ 18.

### C.    Procedural Background

The Plaintiffs filed this lawsuit on January 14, 2025, against the Director of USCIS and the Secretaries of the Departments of State and Homeland Security, alleging that the Defendants are unreasonably delaying reaching final decisions on their refugee applications. Compl., ECF No. 1. On February 20, 2025, the Plaintiffs filed an Amended Complaint, seeking relief under the Administrative Procedure Act (APA), the Declaratory Judgment Act, and the Mandamus Act. FAC ¶¶ 179–187. On April 30, 2025, the Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. Dismiss, ECF No. 14. That motion is now fully briefed. *See* Opp'n, ECF No.17; Reply, ECF No. 18.

## LEGAL STANDARD

"When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims." *Hill v. U.S. Dep't of the Interior*, 699 F. Supp. 3d 1, 12 (D.D.C. 2023) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); and then citing *U.S. Ecology, Inc. v. U.S. Dep't of the Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000)). In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), courts "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)). But "[b]ecause the court may not address the plaintiff's claims without subject-matter jurisdiction, a motion to dismiss under Rule 12(b)(1) [also] imposes an affirmative obligation on the court to ensure that jurisdiction is proper." *Himex Co. v. United States*, 17 F. Supp. 3d 77, 79 (D.D.C. 2014).

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (cleaned up). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

The Plaintiffs bring two types of claims: (1) claims challenging the Defendants' delays in processing the requests for review of the Plaintiffs' denied refugee applications, and (2) a single claim relating to Executive Order 14163 and the Defendants' implementation of it. The Court is sympathetic to the Plaintiffs' processing-delay claims and recognizes the immense harms and frustration that flow from waiting years for a decision on their reconsideration requests. But these claims fail because the Plaintiffs have not shown that the Defendants have a nondiscretionary duty to resolve the Plaintiffs' reconsideration requests. Further, the Plaintiffs' claim relating to Executive Order 14163 must be dismissed in most respects as meritless or fatally underdeveloped. That claim survives dismissal only insofar as it raises an arbitrary-and-capricious claim.

### A.     Processing-Delay Claims

#### 1.     Jurisdiction

The Defendants raise two jurisdictional hurdles to the Plaintiffs' processing-delay claims: the Plaintiffs' standing and a statutory jurisdiction-stripping provision.

#### a.  Standing

The Court begins with standing. "To maintain an action in federal court," a plaintiff must show that they have standing to sue. *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024)

(citing *Lujan*, 504 U.S. at 560–61). To satisfy the "irreducible constitutional minimum of standing," a plaintiff must establish: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61). At the pleading stage, the burden on a plaintiff is minimal. They must establish only a "plausible claim that each of the standing elements is present." *See Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (cleaned up). "In reviewing questions about a plaintiff's standing," the court must "assume that on the merits the plaintiffs would be successful in their claims." *Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urb. Dev.*, 106 F.4th 1134, 1143 (D.C. Cir. 2024) (cleaned up).

Here, the Defendants argue that the Plaintiffs lack standing to sue the Secretary of State because the Plaintiffs have not plausibly alleged that the State Department caused their injuries or can redress them. Mot. Dismiss 5. The Court disagrees. The Plaintiffs allege that the State Department jointly administers the U.S. Refugee Admissions Program alongside USCIS, FAC ¶¶ 14, 27, 29; that the State Department, along with the other Defendants, "have suspended any processing of Plaintiffs' RFRs," FAC ¶ 16; and that the Secretaries of State and Homeland Security have been entrusted by Executive Order 14163 with determining whether certain "aliens to the United States" can be admitted "as refugees on a case-by-case basis," FAC ¶ 14. At this early stage, assuming the merits of the Plaintiffs' claims, these allegations plausibly establish that the State Department's conduct is causally connected to the Plaintiffs' injuries and that action by the State Department could redress those injuries. *See Pierce v. Yale Univ.*, No. 17-cv-2508, 2019 WL 162029, at *4 (D.D.C. Jan. 10, 2019) (explaining that a "low standard of causation . . . governs

[the standing inquiry] at the pleading stage of the case"), *aff'd on other grounds*, 788 F. App'x 1 (D.C. Cir. 2019).

### b.  8 U.S.C. § 1252(a)(2)(B)(ii)

Next, the Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction to hear the Plaintiffs' processing-delay claims. Mot. Dismiss 6. That provision generally forbids courts from exercising jurisdiction over any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But Section 1252(a)(2)(B)(ii)'s reach is limited. "The Supreme Court has explained that Section 1252(a)(2)(B)(ii) 'bar[s] court review of discretionary decisions only when Congress itself set out the [Secretary]'s discretionary authority in the statute.'" *Luna Gutierrez v. Noem*, No. 25-cv-1766, 2025 WL 3497016, at *7 (D.D.C. Dec. 5, 2025) (quoting *Kucana v. Holder*, 558 U.S. 233, 247 (2010)). In other words, to trigger Section 1252(a)(2)(B)(ii)'s jurisdictional bar, the statute must "specif[y]" that the Secretary's authority is discretionary—it is not sufficient that the Secretary's discretionary authority is "assumed," "contemplated," "implied," or "anticipated." *See Kucana*, 558 U.S. at 243 n.10.

Here, the Defendants invoke 8 U.S.C. § 1157(c)(1) as the provision that triggers the jurisdictional bar. Section 1157(c)(1) states that "the Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee" who meets certain conditions. 8 U.S.C. § 1157(c)(1). The Court does not doubt that the decision whether to "admit any refugee" is one "shielded from court oversight by § 1252(a)(2)(B)(ii)." *Kucana*, 558 U.S. at 248 (identifying Section 1157(c)(1) as such a provision). But the Court disagrees that the Plaintiffs' claims of delay in this case challenge such a decision.

Instead, the Plaintiffs challenge the Defendants' alleged failure to timely resolve their requests for review of their denied applications—which ask USCIS to reconsider its determinations that the Plaintiffs are ineligible for refugee status. *See* FAC ¶¶ 2–3, 168. That alleged failure is not a decision whether to "admit [a] refugee," 8 U.S.C. § 1157(c)(1), or otherwise a "decision or action . . . the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security," *id.* § 1252(a)(2)(B)(ii).

The Defendants admit that no statute specifies that the timing of request-for-review adjudications is in the discretion of the Attorney General or the Secretary of Homeland Security. Reply 3. In their view, "[t]he INA never even contemplates a request-for-review process, so of course the INA would contain no provision on whether a non-existent process is discretionary." *Id.* But this gives away the game. Again, Section 1252(a)(2)(B)(ii)'s jurisdictional bar applies only when "Congress itself" has specified that the challenged decision or action is in the Attorney General's or Secretary's discretion. *Kucana*, 558 U.S. at 247.

It is true, as the Defendants observe, that the Secretary has promulgated a regulation stating that "[t]here is no appeal from a denial of refugee status." 8 C.F.R. § 207.4; *see* Reply 2. It is also true that the request-for-review process appears to be the invention of the Department of Homeland Security, perhaps relying on Section 1157(c)(1)'s grant of regulation-making authority. But although that grant of regulation-making authority may be sufficient to conclude that agency discretion over such invented procedures can be "assumed," "contemplated," "implied," or "anticipated"—it is not enough to say that it is specified by statute. *See Kucana*, 558 U.S. at 243 n.10. Indeed, the Supreme Court has rejected that Section 1252(a)(2)(B)(ii) "delegate[s] to the Executive authority" to limit judicial review via a regulation that specifies that a decision is discretionary. *Kucana*, 558 U.S. at 253; *see also Beshir v. Holder*, 10 F. Supp. 3d 165, 175 (D.D.C.

2014) (interpreting *Kucana* to hold that discretion that is granted "only within a regulation, not a statute" is insufficient to trigger Section 1252(a)(2)(B)(ii)). Thus, this Court concludes that Section 1252(a)(2)(B)(ii) does not strip its jurisdiction over the Plaintiffs' processing-delay claims.[4]

### 2.   Merits

The Court now turns to the merits of the Plaintiffs' processing-delay claims. Section 706(1) of the APA provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Mandamus Act (28 U.S.C. § 1361) and the All Writs Act (28 U.S.C. § 1651) similarly permit a Court to compel agency action through a writ of mandamus. *See In re Nat'l Nurses United*, 47 F.4th 746, 752 & n.4 (D.C. Cir. 2022). "The standards for reviewing agency inaction . . . are the same under the APA and Mandamus Act, so the Court will address both claims together." *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *10 (D.D.C. Aug. 21, 2025) (quoting *Doroodchi v. Rubio*, No. 24-cv-3170, 2025 WL 1865114, at *2 (D.D.C. July 7, 2025)). "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take,' . . . and, second, that the delay was unreasonable[.]" *Da Costa v. Immigr. Investor Program Off.*, 80 F.4th 330, 340 (D.C. Cir.

---

[4] The Defendants extensively rely on *Beshir v. Holder*, in which a court in this District relied in part on Section 1252(a)(2)(B)(ii) to hold that it lacked jurisdiction to hear a claim that USCIS unreasonably delayed acting on an application for adjustment of immigration status. 10 F. Supp. 3d 165, 172 (D.D.C. 2014). As *Beshir* itself acknowledged, courts (including courts in this District) disagree on whether Section 1252(a)(2)(B)(ii) strips jurisdiction over such claims. *Id.* at 172–73 (collecting cases). But that debate is not on point for the Plaintiffs' challenge here. Regardless of whether this Court has jurisdiction over claims alleging unreasonable delay of a refugee-admission decision, the Plaintiffs here allege a delay of a reconsideration decision. *See Meija Rodriguez v. DHS*, 562 F.3d 1137, 1143 (11th Cir. 2009) ("[S]imply because the Secretary has the ultimate discretionary authority to grant an immigration benefit does not mean that every determination made by USCIS regarding an alien's application for that benefit is discretionary, and hence not subject to review.").

2023) (quoting *Norton v. S. Utah Wilderness All.*, 562 U.S. 55, 64 (2004)). The Court concludes that the Plaintiffs' unreasonable-delay claims fail at the first step: the Plaintiffs have not shown that the Defendants have a nondiscretionary duty to resolve their requests for review.[5]

The statute governing refugee admissions is a good place to start. As stated above, Section 1157(c)(1) provides that the Attorney General may admit refugees "pursuant to such regulations as the Attorney General may prescribe." 8 U.S.C. § 1157(c)(1). And by regulation, "[t]here is no appeal from a denial of refugee status." 8 C.F.R. § 207.4. Further, the USCIS website, which is the only source the Parties have identified that addresses requests for review, states that "USCIS may exercise [its] discretion to review a case" if an applicant submits a "timely Request for Review." *Request for Review Tip Sheet*, U.S. Customs & Immig. Serv., *supra*. All of this evinces that USCIS is not required to process requests for review.

The Plaintiffs identify nothing persuasive to the contrary. They rely on 5 U.S.C. § 555(b), which states that "[w]ith due regard for the convenience and necessity of the parties or their

---

[5] The Defendants also raise 5 U.S.C. § 701(a)(2), which provides that the APA "applies . . . except to the extent that[] . . . agency action is committed to agency discretion by law." Mot. Dismiss 7. If Section 701(a)(2) is a jurisdictional limitation, then this Court would have to address it before proceeding to the merits of the Plaintiffs' processing-delay claims. *See, e.g.*, *Chevron USA Inc. v. EPA*, 45 F.4th 380, 384 (D.C. Cir. 2022). The D.C. Circuit's cases, however, are inconsistent about whether Section 701(a)(2) constitutes a jurisdictional limitation or instead goes to the merits of an APA claim. *Compare, e.g.*, *Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 458 (D.C. Cir. 2001) ("The ban on judicial review of action 'committed to agency discretion by law' is jurisdictional."), *with, e.g.*, *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[A] complaint seeking review of agency action 'committed to agency discretion by law' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)." (citation omitted)). There is also a circuit split on that question. *See Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *19 n.5 (D.C. Cir. Nov. 22, 2025) (per curiam) (unpublished) (collecting cases). In 2011, the Circuit reviewed its cases and concluded that the older—and thus controlling—rule in this Circuit is that Section 701(a)(2) is not jurisdictional. *Sierra Club*, 648 F.3d at 854. In a recent unpublished opinion, the Circuit reaffirmed that position. *Make the Road N.Y.*, 2025 WL 3563313, at *19. Accordingly, the Court considers itself bound by that rule. Here, because the Court concludes that the Plaintiffs' processing-delay claims fail regardless of Section 701(a)(2), the Court need not address that provision.

representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *See* FAC at 24 nn. 10, 13; Opp'n 8. The D.C. Circuit has indicated that some submissions to agencies trigger Section 555(b) while others do not. *Compare Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–100 (D.C. Cir. 2003) (petition for recognition as an Indian tribe), *with Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (per curiam) (unpublished) (immigrant visa application). Here, the Court concludes that Section 555(b)'s directive does not cover the Plaintiffs' requests for review. The request-for-review process does not appear to be codified in a statute or regulation. Instead, it seems to be an "informal" process, *Al-Haddad v. Sessions*, No. 2019 WL 222503, at *1 (D.D.C. Jan. 16, 2019), where USCIS sometimes chooses to take a second look at a denial of refugee status. This Court is not convinced that USCIS leaving such a door open to reconsideration means that each and every request constitutes "a matter presented to" USCIS that the agency is compelled to resolve. *See* 5 U.S.C. § 555(b).

The portions of the USCIS website highlighted by the Plaintiffs do not reflect that USCIS's review is mandatory. The website says (1) that handwritten requests for review that are unreadable "will be rejected and returned," and (2) that only an applicant's "first RFR" rather than "additional RFRs" "will be reviewed." *Request for Review Tip Sheet*, U.S. Customs & Immig. Serv., *supra*; Opp'n 6, 8. These statements are merely advice intended to help applicants avoid summary denial of their request. The USCIS website also appears to note that applicants "will receive a written decision from USCIS regarding [their] RFR." *Request for Review Tip Sheet*, U.S. Customs & Immig. Serv., *supra*; Opp'n 32. But in context, this is best understood as explaining the form of a decision on a request for review, not as an about-face by the agency regarding its discretion.

Finally, the Plaintiffs analogize request-for-review processing to visa-application processing, identifying many cases in which courts in this District have held that consular officers have a non-discretionary duty to adjudicate applications for a visas. Opp'n 9–11. But in that context, unlike this one, a statute requires the government to process applications. *See* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."). The absence of any similar binding directive for requests for review renders cases regarding visa applications inapposite.

The Court is deeply troubled that the Plaintiffs have been waiting for more than six or even nine years for resolution of their requests for review. It understands that unresolved submissions can create uncertainty and anxiety. Nevertheless, the Court concludes that the Plaintiffs have not shown that USCIS is required to act on their requests for review. In the absence of such a showing, the Court is compelled to deny their processing-delay claims.

## B.    Executive Order Claim

The Plaintiffs' remaining claim challenges Executive Order 14163 and its implementation. In some respects, however, the nature of the Plaintiffs' challenge is hard to make out. Based on their Opposition, it seems that the Plaintiffs have four arguments for APA relief: (1) that Executive Order 14163 is *ultra vires*, (2) that the Defendants' implementation of the Executive Order was arbitrary and capricious, (3) that the Defendants' implementation was contrary to law, and (4) that the Defendants implemented the Executive Order without undertaking notice-and-comment rulemaking. For the most part, the Court concludes that these arguments are unpersuasive or fatally underdeveloped. The exception is the Plaintiffs' arbitrary-and-capricious claim.

### 1. *Ultra Vires*

The Plaintiffs spend a large portion of their Opposition arguing that President Trump's issuance of Executive Order 14163 was *ultra vires*. "To state an <u>ultra vires</u> claim, a plaintiff must establish 'that (1) review is not expressly precluded by statute, (2) there is no alternative procedure for review of the statutory claim[,] and (3) the challenged action is plainly in excess of the agency's delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" *Masroor v. Noem*, No. 25-cv-256, 2025 WL 2439176, at *3 (D.D.C. Aug. 25, 2025) (quoting *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021, at *12 (D.C. Cir. Aug. 13, 2025)). Such claims "are reserved for extraordinary cases where 'the agency action goes beyond mere legal or factual error and amounts to a clear departure by the agency from its statutory mandate' or is otherwise 'blatantly lawless.'" *Id.* (quoting *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022)).

But right off the bat, the Plaintiffs' challenge faces an obstacle: it is not clear that the Plaintiffs asserted it in the Amended Complaint. The Amended Complaint's allegations regarding the Executive Order are sparse. It alleges that the Defendants "exceeded the scope of the [Executive Order] by halting *all processing* of *all refugee applications* under" the U.S. Refugee Assistance Program, and that as a result, "Defendants have suspended any processing of Plaintiffs' RFRs." FAC ¶ 15–16. And invoking the language of various subdivisions of Section 706(a)(2), the Complaint states that the "Defendants' actions taken to implement" Executive Order 14163 should be set aside. FAC ¶¶ 175–76, 178. The Amended Complaint does not list *ultra vires* "as a cause of action or specifically address any requirements of <u>ultra vires</u> review"—indeed, the Amended Complaint does not use the phase *ultra vires* at all. *See Masroor*, 2025 WL 2439176, at *3.

For their part, in the Motion to Dismiss, the Defendants interpreted the challenge relating to the Executive Order as one to "USCIS's implementation of [Executive Order] 14163," not to the Executive Order's "legitimacy" itself. Mot. Dismiss 16, 18. In their Reply, the Defendants do not address the *ultra vires* challenge on its merits, instead arguing that it constitutes an impermissible attempt to amend the Amended Complaint. Reply 7.

The Court is sympathetic. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Rosen-Kellogg v. Mayorkas*, No. 22-cv-3028, 2024 WL 2967430, at *1 (D.D.C. June 6, 2024) (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007)). And it is not easy to discern the elements of an *ultra vires* challenge—or for that matter any other challenge to Executive Order 14163 outside its implementation by the Defendants—in the Amended Complaint. It is true that "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). But that requirement "is meant to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Woolcock v. The Michaels Org. LLC*, 23-cv-1375, 2023 WL 5951980, at *1 (D.D.C. Sept. 13, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Amended Complaint was not adequate to provide fair notice of this *ultra vires* challenge.

Even assuming that the Amended Complaint adequately raised this *ultra vires* challenge, it does not survive dismissal. Although the Plaintiffs purport to argue that Executive Order 14163 is *ultra vires* as applied to them, *see, e.g.*, FAC ¶ 183; Opp'n 43, their Opposition makes no clear connection between the Plaintiffs' pending requests for review and the purportedly unlawful

aspects of the Executive Order. Instead, the Plaintiffs broadly argue that Executive Order 14163 "is *ultra vires* because it unlawfully overrides [the U.S. Refugee Assistance Program] in its entirety." Opp'n 26.[6]

Yet the Plaintiffs do not even attempt to explain why their injuries—continued delays in request-for-review processing—support an undifferentiated attack on Executive Order 14163. This Court will not accept the Plaintiffs' invitation to pass on the legality of the Executive Order in gross. Recall that Executive Order 14163 has two provisions relevant here: (1) it suspended the entry of refugees into the United States, and (2) it directed the Secretary of Homeland Security to suspend decisions on applications for refugee status. 90 Fed. Reg. at 8459. The Court will assess the Plaintiffs' challenge by reference to those two directives.

As for the first directive, the Plaintiffs lack standing. As discussed above, "[a] plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 593 U.S. 659, 668–69 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Here, the Plaintiffs suffer from processing delays. But there is no "'causal connection' between" that injury and the Executive Order's suspension of refugee entry. *Ark Initiative*, 749 F.3d at 1075 (quoting *Lujan*, 504 U.S. at 560–61). Thus, this Court lacks jurisdiction insofar as the Plaintiffs challenge

---

[6] This disconnect, as well as other oddities in the Plaintiffs' briefing, might be explained by the fact that nearly all the relevant portions of the Plaintiffs' Opposition are copied essentially verbatim from—but without attribution to—*Pacito v. Trump*, 768 F. Supp. 3d 1199 (W.D. Wash. 2025). Although the Court is skeptical that this can be written off as mere "sloppy lawyering," for now the Court will do no more than impress upon the Plaintiffs' counsel this Court's "intolerance for plagiarism." *Kilburn v. Republic of Iran*, 441 F. Supp. 2d 74, 77 n.2 (D.D.C. 2006). "[C]itation to authority is absolutely required when language is borrowed." *In re Reid*, 569 F. Supp. 2d 220, 221 n.1 (D.D.C. 2008) (quoting *United States v. Bowen*, 194 F. App'x 393, 402 n.3 (6th Cir. 2006)). "The [C]ourt expects counsel to fully comply with this [C]ourt's rules and submit work product befitting of pleadings in federal court." *Kilburn*, 441 F. Supp. 2d at 77 n.2.

that aspect of the Executive Order. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("[S]tanding is not dispensed in gross." (cleaned up)).

As for Executive Order 14163's second directive, the Plaintiffs' briefing is inadequate. "A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)). That is what happened here. Even if the Court were to excavate the portions of the Plaintiffs' briefing aimed at the Executive Order's suspension of refugee-application processing (as opposed to the suspension of entry), the Court would be left with next to nothing. The Opposition does not even address whether the Executive Order's claimed basis of statutory authority (8 U.S.C. §§ 1182(f), 1185(a)) or any other statute supports that suspension. "The only remaining question is whether an extraordinary circumstance excuses [the Plaintiffs'] forfeiture." *Id.* As best this Court can tell, the Plaintiffs' failure to address this aspect of the Executive Order is a result of the Opposition's verbatim copying of language from *Pacito v. Trump*, 768 F. Supp. 3d 1199 (W.D. Wash. 2025). That case, unlike this one, involved a facial challenge to the Executive Order in its entirety brought by many different stakeholders. Yet the Plaintiffs make no effort to tailor *Pacito*'s reasoning or language to the challenge they brought here. This sort of slapdash lawyering cannot excuse their forfeiture.

In sum, the Plaintiffs have failed to present their *ultra vires* challenge in a form that this Court can consider. Insofar as the Amended Complaint raises this challenge, it must be dismissed.

### 2.    The Defendants' Implementation

The Court now turns to the Plaintiffs' APA theories, all of which challenge the Defendants' implementation of Executive Order 14163. Specifically, the Plaintiffs allege that the "Defendants

suspended all processing of all refugee applications, including the processing of [the Plaintiffs']
RFR's," which the Plaintiffs refer to as "the Agency Suspension." Opp'n 32.

The Defendants argue that these challenges fail at the threshold because the Plaintiffs have
failed to identify a final agency action. Mot. Dismiss 16. "For agency action to be final, it must
(1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'be one by which
rights or obligations have been determined, or from which legal consequences will flow.'" *Luna
Gutierrez*, 2025 WL 3497016, at *9 (quoting *Sierra Club v. EPA*, 955 F.3d 56, 61 (D.C. Cir.
2020)). Here, the Defendants dispute only that the suspension of refugee-admissions processing
constitutes a consummation of the agency's decisionmaking process. Mot. Dismiss 16. In their
view, Executive Order 14163 is only a temporary measure, given that it calls for periodic reports
regarding whether the resumption of refugee entry would be in the interests of the United States.
*Id.* The Court disagrees. "[A]n agency cannot avoid judicial review by . . . characterizing a final,
operative decision as interlocutory and pending further review, someday." *Janay v. Blinken*, 743
F. Supp. 3d 96, 112 (D.D.C. 2024). The potential that the President might at some point in the
future rescind or modify Executive Order 14163 does not mean that the Defendants' suspension
of refugee-application processing in accordance with that Order is "of a merely tentative or
interlocutory nature." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997). Accordingly, the Court turns
to addressing whether any of the Plaintiffs' APA theories survive dismissal.

### a. Arbitrary and Capricious

The Plaintiffs' first APA theory is that the Defendants' suspension of refugee-application
processing was arbitrary and capricious. Opp'n 35. Agency action is arbitrary and capricious "if
the agency has relied on factors which Congress has not intended it to consider, entirely failed to
consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *S. Airways Express, LLC v. U.S. Dep't of Transp.*, 159 F.4th 50, 59 (D.C. Cir. 2025) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Plaintiffs argue that the challenged suspension is arbitrary and capricious because the Defendants have not explained their change in plans to process refugee applications, nor did they consider applicants' reliance interests. Opp'n 35–36.

The Defendants argue that it was not arbitrary and capricious for USCIS to follow Executive Order 14163's directive to suspend refugee-application processing. Reply 8. But "the existence of an executive order does not automatically render an agency's implementing actions adequately reasoned. Even when implementing an executive order, agencies are bound by their APA obligations to analyze the impacts, costs, and benefits of alternative policy options." *Doctors for Am. v. OPM*, 793 F. Supp. 3d 112, 145 (D.D.C. 2025) (cleaned up). The fact that the challenged suspension here is "based on the President's Executive Order hardly seems to insulate [it] from judicial review under the APA, even if the validity of the Order were thereby drawn into question." *Chamber of Com. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996).

And more fundamentally, "this Court's review of the arbitrary-and-capricious claim must be based on the full administrative record that was before the Defendants at the time they made their decision." *Luna Gutierrez*, 2025 WL 3497016, at *24 (cleaned up). Yet the Court has not seen the administrative record, nor have the Parties based any of their arguments on that record. Thus, the Court concludes that it cannot dismiss the aspects of the Amended Complaint raising an arbitrary-and-capricious claim.

The Defendants' other argument in support of dismissal is not persuasive. The Defendants contend that because USCIS has no duty to process requests for review of refugee applications, its

choice whether to review such requests cannot be arbitrary and capricious. Mot. Dismiss 17. This "misconstrues the nature" of this claim—here, the argument is that the challenged suspension "'is arbitrary, capricious, and unlawful,' under § 706(2) of the APA, not that Defendants have unlawfully withheld a non-discretionary duty under § 706(1)." *Gomez v. Trump*, 485 F. Supp. 3d 145, 199 (D.D.C. 2020).

Finally, the Parties dispute whether the Defendants' suspension of refugee-application processing exceeded the scope of Executive Order 14163's suspension directive. *See* Opp'n 37; Reply 8–9. Although that dispute may be relevant to determining the ultimate lawfulness of the challenged suspension, it is irrelevant here because, again, "the existence of an executive order does not automatically render an agency's implementing actions adequately reasoned" and the Court's decision must be based on the administrative record. *See Doctors for Am.*, 793 F. Supp. 3d at 145. In sum, the Court concludes that the Amended Complaint's arbitrary-and-capricious claim survives dismissal at this early stage in the absence of an administrative record.

### b. Contrary to Law

The next APA theory advanced in the Plaintiffs' Opposition is that the Defendants' suspension of refugee-application processing exceeds the Defendants' statutory authority and is not in accordance with the law. Opp'n 38. But this is another place where the Plaintiffs' threadbare briefing is insufficient to save this argument from forfeiture. With two citations omitted, this is the Plaintiffs' argument in full:

> The Agency Suspension contradicts the clear intent of Congress "to provide a permanent and systematic procedure for the admission to this country of refugees . . . and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted." And as explained above, the Refugee Ban EO on which Defendants rely as authority for their actions is itself *ultra vires*.

Opp'n 38. The Court declines to address this "'asserted but unanalyzed' argument." *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613 (D.C. Cir. 2000) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)). This result is particularly appropriate because the Defendants also do not address this APA theory in either their Motion to Dismiss or their Reply. "Because the [P]arties' briefing inadequately addresses" this theory, "the [C]ourt will not decide the matter here." *Catalyst & Chem. Servs., Inc. v. Glob. Ground Support*, 350 F. Supp. 2d 1, 20 n.18 (D.D.C. 2004).

### c. Notice and Comment

Finally, the Plaintiffs argue that the Defendants' suspension of refugee-application processing constitutes legislative rulemaking promulgated without notice-and-comment procedures. Opp'n 38. "The APA generally requires substantive rules to be promulgated through notice-and-comment rulemaking." *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 44 (D.D.C. 2020) (citing 5 U.S.C. § 553). But that requirement does not extend to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017) (quoting 5 U.S.C. § 553(b)(3)(A)). The Defendants argue that the challenged suspension is a statement of policy that is exempt from notice-and-comment requirements. Mot. Dismiss 20.

At this point, it should not come as a surprise that the Plaintiffs' Opposition yet again results in forfeiture. Although the Plaintiffs spend pages describing the kinds of rules that require notice and comment, Opp'n 38–41, this is the entirety of their argument explaining why the challenged suspension is such a rule:

> The Agency Suspension is a substantive, or legislative, rule because it effects legal changes of general applicability. They [sic] terminate all USRAP case processing, decisions, admissions, and travel, and they [sic] block all funding to USRAP partner nonprofits. The fact that it effectively nullifies pre-existing regulations that were themselves codified through notice-and-comment rulemaking only bolsters this conclusion.

Opp'n 41. Compare that argument to this passage from *Pacito*:

> The Agency Suspension and Refugee Funding Suspension are substantive, or legislative, rules because they effect legal changes of general applicability. They terminate all USRAP case processing, decisions, admissions, and travel, and they block all funding to USRAP partner nonprofits. The fact that they effectively nullify pre-existing regulations that were themselves codified through notice-and-comment rulemaking only bolsters this conclusion.

768 F. Supp. 3d at 1231–32.

The Plaintiffs have again copied language from *Pacito* verbatim, without attribution, and without much thought about how it applies in this context. And here, the different context is important—the challenged suspension in this case has nothing to do with admission, travel, or nonprofit funding. Yet the Plaintiffs do not distinguish those irrelevant features from the refugee-application processing at issue here. The Court declines "to do counsel's work." *Bernhardt*, 923 F.3d at 179 (quoting *Schneider*, 412 F.3d at 200 n.1). By failing to do more than regurgitate largely inapplicable language from *Pacito*, the Plaintiffs have forfeited this claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Defendants' Motion to Dismiss, ECF No. 14.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 3, 2026